646 A.2d 669

**SHENANGO, INC., Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (WEBER), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 15, 1994.

Decided Aug. 1, 1994.

Paul E. Sutter, for petitioner.

Daniel K. Bricmont, for respondent.

Before DOYLE and NEWMAN, JJ., and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

Shenango, Inc. (Employer) petitions for review of an order of the Workmen's Compensation Appeal Board (Board) which affirmed the referee's decision and order granting Richard Weber (Claimant) benefits for partial disability.

The factual and procedural history is as follows. In March of 1987, Claimant's job responsibilities in the ram department included making and preparing the cores for the ingot molds, which involved the use of vibrating tools. On March 27, 1987, Claimant developed carpal tunnel syndrome in both wrists,

which was a work-related injury for which he was paid total disability benefits as of March 30, 1987, by way of a notice of compensation payable. On August 3, 1987, Claimant was released to return to work, at which time his physician instructed him not to use any vibrating tools, or risk causing more damage to his wrists. Claimant signed a final receipt on August 11, 1987. Employer returned Claimant to work on August 3, 1987, in the ram department, the same department in which Claimant worked at the time of the injury, at no loss of income. After working in the ram department, where he had thirteen (13) years of seniority, Claimant then bid on a job outside of that department,[1] in which he performed work at less than his pre-injury wages. By virtue of his bidding on a job outside of the ram department, Claimant lost his seniority there. His earnings not being equal to or greater than his pre-injury earnings, on September 12, 1990, Claimant filed a petition to set aside the final receipt entered into on August 11, 1987, claiming that he was partially disabled at the time of the signing of the final receipt.

On August 27, 1992, the referee issued a decision and order setting aside the final receipt dated August 11, 1987, and granting Claimant partial workmen's compensation benefits from August 3, 1987, through the date of the decision and continuing into the future. In his decision, the referee made the following relevant findings of fact:

   7.   Upon returning to work, claimant was placed in the position of an oven chain man in the ram department. This was due to the company being short of men in that department. Claimant remained in this position for two (2) weeks. Subsequent to this position, claimant next worked as a small cores operator in the no bake department. This position did not require the claimant to use any vibrating tools, but it held no type of incentive. Claimant voluntarily bid outside of his department for the small cores operator position and, as a consequence, gave

---

1. There are seven different departments at Shenango in which one can establish seniority. However, any seniority established in a department is erased once one transfers out of that department. *See* R.R. at p. 50a–51a.

up 13 years of department seniority in the ram department.

8. Claimant held a number of subsequent positions with the employer outside the ram department. All of these positions paid less than the claimant's pre-injury wage.

9. Defendant's position is that there were jobs within the ram department that were non-disabling and did not involve the use of vibrating tools which claimant could have bid on. Instead, he bid out of the department, and, in fact, he bid on non-incentive jobs which denied him opportunity to earn the incentives which would have kept his wages at a level equal to what he had been earning prior to being injured.

10. This Referee finds that as a result of suffering a work-related injury on March 27, 1987, the claimant did have a partial residual disability at he [sic] time he returned to work. The parties agreed that the claimant could not return to his former occupation involving the use of vibrating tools and that the only issues to be decided is [sic] what amount, if any, is due to the claimant for past partial disability (N.T. 1/15/91 at 3).

Based upon these findings of fact, the referee made the following conclusions of law:

1. The claimant has met his burden of proving that all disability due to his March 27, 1987, work injury had not terminated on August 11, 1987, when the Final Receipt was signed.

2. Having met his burden of proof, claimant is entitled to have the August 11, 1987, Final Receipt set aside.

. . . .

5. Before bad faith can be claimed against claimant, defendant must first prove a job was actually available for claimant with notice of such given to claimant. Claimant must then have not acted in pursuit of the job offerings.

6. The burden was not upon the claimant to bid on any job position within the company. Defendant–Employer carried the burden of finding alternative work for claimant

meeting all of the physical limitations and health require-
ments.

7. Defendant–Employer having failed in their burden of
proof, claimant is entitled to a reinstatement of worker's
compensation benefits as of August 3, 1987.

On October 1, 1993, the Board entered an order affirming
the decision and order of the referee and dismissing the
appeal of the Employer.

On appeal to this Court,[2] Employer argues that the
referee's findings were not based upon substantial evidence.
Specifically, Employer argues that the Board erred as a
matter of law in affirming the referee in awarding partial
disability benefits to the Claimant because his loss of earnings
was not attributable to his work-related injury but rather, was
due to his voluntary action of bidding outside his department
of seniority.

The issue in this case is the same as that presented in
*Kachinski v. Workmen's Compensation Appeal Board,* 516
Pa. 240, 532 A.2d 374 (1987), namely, whether the employer
has shown the availability of suitable employment such that a
claimant's benefits can be terminated or modified. In *Kachin-
ski,* the Supreme Court established a four-prong test, enumer-
ating the conditions that an employer must meet before
terminating or modifying benefits. The facts here demon-
strate that the only criteria set forth in *Kachinski* with which
we are concerned is No. 2, which provides:

2. The employer must then produce evidence of a referral
(or referrals) to a then open job (or jobs) which fits the
occupational category for which the claimant has been
given medical clearance, e.g., light work, sedentary work,
etc.[3]

---

2. Our scope of review is limited to determining whether constitutional
rights have been violated, whether an error of law has been committed
and whether all necessary findings are supported by substantial evi-
dence. *King v. Workmen's Compensation Appeal Board (Wendell H.
Stone Company),* 132 Pa.Commonwealth Ct. 292, 572 A.2d 845 (1990).

3. The three other criteria set forth in *Kachinski* are as follows:

This is a situation in which the employer has returned the claimant to a job within his physical limitations, i.e., no vibrating tools, at a rate equal to or greater than his pre-injury rate.

Review of the record reveals that Claimant testified that he had full knowledge that he would lose his thirteen (13) years of seniority in the ram department once he voluntarily bid out of that department. *See* R.R. at p. 50a–52a. Employer testified that within the ram department, there were always incentive jobs that did not use vibrating tools available for Claimant to bid on had he not voluntarily bid out of that department. *See* R.R. at p. 75a. Upon a cross-examination by defendant's counsel, Claimant gave the following testimony:

Q. But, let me ask you this. Are all of the incentive jobs primarily in the ram department?

A. No. There are other departments that have incentive jobs.

Q. Are there jobs in the ram department that do not require vibrating tools?

A. There is some jobs, yes.

Q. Are there jobs in the ram department that do not require vibrating tools that are incentive?

A. Yes.

(R.R. at p. 58a.)

Claimant later testified upon direct examination:

Q. Now, in order to clarify for the referee, what other jobs—what jobs were available to you in the department from the point of view of your physical capacities; just leave it at that for the moment?

A. Well, I'd say the ones I had the ability to work would have been the Muller operator and the oven chainman.

1. The employer who seeks to modify the claimant's benefits on the basis that he has recovered some or all of his ability must first produce medical evidence of a change in condition.

. . . .

3. The claimant must then demonstrate that he has in good faith followed through on these job referral(s).

4. If the referral fails to result in a job, then claimant's benefits should continue.

*Id.* 516 Pa. at 252, 532 A.2d at 380.

(R.R. at p. 104a.)

The Claimant admitted that there were available jobs in his department of seniority, the ram department, that were within his physical capabilities. Furthermore, there was no evidence in the record that there were no jobs available in the ram department which Claimant could perform, and the referee made no such finding. Thus, when Claimant bid out of that department, as permitted under the bargaining agreement, and there being jobs within his capabilities in the ram department, he lost his seniority therein and had no seniority in any of the other departments. The wage loss was a choice voluntarily made by the Claimant by bidding jobs outside of the ram department. Clearly, Claimant's loss of wages is not the result of his physical limitations from his work injury of March, 1987, but a result of his voluntary relinquishment of his seniority in the ram department.

Accordingly, we will reverse the order of the Board.

## ORDER

AND NOW, this 1st day of August, 1994, the order of the Workmen's Compensation Appeal Board is reversed, and benefits are denied.